Thank you, Your Honor. May it please the Court, Timothy Coates on behalf of Appellant Eric Youngquist. This is, of course, an appeal from a denial of qualified immunity in a Fourth Amendment wrongful arrest case. I've had the benefit of an opening brief and a lengthy reply brief. I don't have a lot to add beyond what's in the brief other than a quick observation that this is a good case for qualified immunity in two respects. One, it's dealing with one of the hazier areas of Fourth Amendment jurisprudence, which is probable cause. Second, it involves something that is itself quite often a discretionary call by a police officer, which is weighing evidence that is in his possession, assessing the credibility of witnesses. That's a day-to-day task for a police officer. It is highly discretionary. You apply that with the blurry standards of probable cause. I think this fits squarely into exactly the kind of conduct that qualified immunity is designed to do. Kennedy So you don't think a 10-year-old girl that had — 10-year-old girl, right? Youngquist Yes, 10-year-old girl, definitely. Kennedy If I have my facts correctly in my mind. Who I guess had some history, but of which your client was not aware, some history of being a troublemaker and a not entirely truthful, but I guess your client was not aware. Youngquist Well, he — a couple of things. In terms of background information from other students or from teachers, correct. He certainly knew that there was something going on between the teacher and the student. The student admitted that she did not like Ms. John and that she had been in trouble in that class when he interrogated her, and that's one of the things here. This is a very experienced police officer. This is a fellow who had additional training beyond regular, you know, post-examination techniques. He had child abuse investigation, I think some 40-some hours in that. He had a general interrogation class over and above the usual. He'd been a school resource officer. He'd had, you know, general background on that well — as well. And so when he went — went through the interrogation with the child, one of the things that struck him, in fact, that made it more veracity — more truthful to him was the fact that she acknowledged that she had a problem with the teacher. So did he have it from other sources? No. But it is something that he did glean from the student, and the fact that she was so forthright, you know, in his mind, bolstered her credibility in this regard. Kennedy But there were problems with her — I'm not sure they're things she knew. Maybe they're things she ought to have known. But there were problems with her telling stories and not always being truthful and being sort of a troublemaker of school. If I — if — again, I'm — I'm — Correct. I — this is on summary judgment, so I'm assuming that she's an angel, in fact. But I'm just saying, as far as — as far as — No. As far as the record is concerned, there is evidence that she was — she tended to make up stories to get people in trouble. Am I — am I overstepping? I'm not sure it's exactly make-up stories to get people in trouble. I think that the evidence is that she was a troublemaker. I mean, I think that that's clear. The extrinsic evidence is basically — With — with — with a — with a — with a cast of dishonest, not always being truthful and not always being entirely honest, am I — am I overstating there? Well, I think overstating a little bit. I think what we have in there is that she was definitely a troublemaker. There was animosity between her and the teacher. But it really — But let's — let's say he had known all of that. He could still have arrested —  Absolutely. I mean, I think that's one of the points that — I mean, he didn't know. But — And then we have to get to the question of whether before he goes and arrests this teacher, he needs to talk to the authorities, to school authorities, to find out whether or not, you know, what is the — what they know about the student. Yes. He could. I mean, if he had known — I think that's our point, you know, particularly in the reply when the plaintiff comes back and says, gee, you should have done it, you would have found all this stuff. I think our point is, even knowing that doesn't diminish probable cause, especially given what he discerned during the interview. Because, again, I know he took into account the fact there was some animosity. He tried to shake her in her story, you know, because even — I mean, even kids who lie and even kids who are problemed get abused. I mean, that's something that child abuse investigators know. And so for him, if you look at his statement, what was critical to him was the specificity of the charges, the fact that he continually tried to get her to exaggerate, to lead her out of her story, wasn't able to do it. She was very consistent with it. She — The context — It's one of those sort of Newell's propositions, because if she signs on to those things, exaggerations, then he can say, look, you know, she, in fact, had these other — she was saying also — also saying these other things, and I believe that. Well, but it's — but as he points out, though, the reason you do that — I mean, that's an investigative technique, is you do try to say, so it was the right shoulder, and then they go, no, no, it was the left side. I mean, you do that because you — because you want to guard against leading them. That's what they do. I mean, that's part of the investigative technique, you know. That — that's why he goes down the — Well, I've also heard many stories of police putting words in the witness's mouth and then saying, aha, I got you, or, you know, a good paramedic — Well, but she's not — she's not being investigated for a crime. She's being investigated as a witness. And I think — I really do think it's an investigative technique. Or I — or I — or I — I believe everything you just said. But I believe that. But, you know, we — we don't. Sure. I think the other aspect is, you know, there are a checklist of things that, when he was talking to the witness, that made the account seem, you know, true to him or likely true to him, and that was, you know, the specificity of her accusations, the fact that she didn't volunteer, and this was something that was drawn out of her when she was, you know, taking a test for something else. She wouldn't talk about it on campus, only when she was in the presence of the police officer in a, quote, safe place, again, consistent with child abuse. You know, again, this is a trained officer. There are all of these indicia. The contents of the notes that — which led to her initially being, you know, brought into the principal's office are consistent with the nature of the sexual abuse allegations. I mean, this isn't just, you know, Ms. Johns is a terrible person, I hate her. There were specific sexual references. All of these factors taken together, which is, of course, the textbook definition, totality of circumstances for probable cause, led him to believe that this was a truthful account, or at least not inherently incredible. What do you make of the fact that she asked for a lawyer, or she asked to document her request for a lawyer, and then that's when he arrested her, instead of continuing with the interview or — Well, I know. I take your point. I mean, I absolutely think that this was one of those terrible, you know, constellations of poor circumstances in various ways, one of which is — One might even say poor judgment. Well, perhaps, you know, you can have poor judgment, but not be — But not the officer. Not the officer's own client, necessarily, but just objectively looking at it. Yes. Would you like to do — there might be cases where you might like to do more investigation. Does that mean there's not probable cause? No. I mean, it gives the impression that he arrests her. You know, he might have had the right to do it or might not have, but that he did it because she wasn't kowtowing to him or because she was exercising a constitutionally protected right, it doesn't make the — raise one's confidence in the police when officers do that. I'm sure you will already have communicated that to your client. It is not ideal by any means. But, again, I think it's probable cause. I think we can go beyond not ideal. I think we can really say it's really sort of — I suppose when you're dealing with probable cause, it's very important not to analyze the problem in terms of hindsight on the basis of what turns up later. You have to see what would a reasonable police officer, knowing what he knew at the time he made the arrest, have concluded, not that it turns out later on that she's maybe a bad girl. Correct. Because I don't know him. Exactly. The one thing that — the only problem I see in the case is it looks as though he acted rather precipitously when he arrested her. When he said — when she said she wanted to have a lawyer present when it was questioned, he said to her, well, then I have no choice but to arrest you. Now, this isn't someone that, there's every reason to think, was going to be doing something terrible if she wasn't immediately arrested. He had seen earlier that she had been relieved from her assignment as a teacher and suspended after this thing developed. Well, I'm not sure whether that was — the administrative leave was communicated to the officer or not. My reflection is that that's not clear. But even assuming that, I mean, if he has probable cause to arrest, he can arrest her then. I mean, I think clearly so. This isn't a case where we're talking about whether it was an improper warrantless arrest. At least that's not been the focus of the case. If he has probable cause, this is a person who's committed a serious felony. There's still the danger of flight or destruction of evidence. She's on school premises still. I think the case law we've talked about, say again, if he has probable cause, he can't arrest her at that moment. Her statement — Even if she says, as she's doing, if you know — I could, I could not. But you're black, so I'm going to arrest you. Well, but that's — then that becomes a different case because of the kind of discrimination. I asked you a question. Yeah. At that point — I asked you a question. At that point — What's the answer to that — to my question? The answer to that question is, can he still arrest — arrest the person? Yes. If he has probable cause, if there's a racial motivation, different type of claim, you know, maybe a Fourteenth Amendment case saying, well, you only exercise your discretion this way with people of a certain color or you're discriminatory. But if he otherwise has probable cause to arrest, the Fourth Amendment claim is a valid Fourth Amendment claim. So — so her problem here is she raised the wrong claim. So if he says to her, you know, I could arrest you, I could not arrest you, the reason I'm arresting you is because you asked for a lawyer. I'm doing it because you asked for a lawyer. And, you know, people who exercise constitutional rights to define my authority just really personally irk me. And I'm going to do it for that reason. Well, I mean — The problem — the problem at that point is she doesn't raise a Fifth Amendment claim. Well, and — Or Sixth Amendment claim, whatever — whatever would be applicable right there. Is it the Fifth Amendment or the Sixth Amendment? Probably Sixth — it might be Fifth Amendment because it's a self-incrimination claim. It's self-incrimination. Yeah. I mean, that's — It's questioning. So it's a sort of a quasi-Fifth — But — It's a five — five-and-a-half Amendment claim. Yes. But it — it becomes a — it's a different inquiry than whether it's probable cause for the arrest. And it runs — it collides into those other cases, though, that say that the officer's subjective intent in arresting you is irrelevant to the Fourth Amendment inquiry. It's also irrelevant to the qualified immunity inquiry. And we cite — we cite a lot of cases to that effect. They're not really discussed by the plaintiff. I mean, the Supreme Court has said that, you know, the Fourth Amendment is — Judge Gould has a question. Yes, Judge Gould. My question for you, sir, is this. Once she said she wanted counsel, could the officer question her further, or did he have to either arrest her or suspend everything? I think it's — for him stepping into a minefield one way or the other, because he starts out by saying he was not regarding it as a custodial interrogation. I think as we cite in — in our opening brief, I think again in the reply, the — it's a foggy area between that line when an interrogation becomes custodial or noncustodial. Given the way she invoked her right to counsel, I think it's a minefield for him conducting the investigation to try and continue questioning her at that point. You know, would it be regarded as custodial? I don't know. I don't think it's unreasonable, particularly from a qualified immunity standpoint, for an officer to say, given what she said, and we quote her declaration, I want to put on record my request to speak to an attorney, at that point, I think he really is, you know, between a rock and a hard place, because if he continues to examine her, he doesn't know if that's going to end up botching the later investigation because he's questioning her outside of counsel. So I don't know. I don't know if he's going to stop questioning her if he has a doubt that he can legally question her. He doesn't have to question her. But when he says, well, in that case, I'm going to arrest you, it makes it sound like, well, if you exercise — if you insist on doing this by the book, by the law, if you insist on your constitutional rights, I'm going to punish you for that. Well, it's not — I don't know if it's punishing. It's just a reality. I have a victim statement that is probable cause. We assume that that's probable cause. I don't need to investigate further. I understand. And that's a good jury argument, but the jury could well see it, if we get to that point, that this was punishment, that putting somebody in handcuffs because they exercise constitutional rights, you know, he might say — he might characterize it a different way, and the jury might look at it and say, no, it's punishment. Here's a big guy who has handcuffs and a gun, and this woman talks back at him, and he decides to punish her by putting the handcuffs on him. Putting the handcuffs on her, I mean, I don't think that's an unreasonable characterization. Again, I think it's going to start running into, you know, qualified immunity under the same grounds. Would a reasonable officer stop questioning at that point? If he has probable cause, he can arrest them. I mean, officers always have a discretion to arrest or not arrest, even in the face of the most heinous crime. There's no mandatory constitutional duty to arrest. It is a judgment call. And what I submit is the case law says once you have the probable cause, you can arrest. Well, are you saying that if he had probable cause, that probable cause could not be destroyed, whatever may have been the motive for which he arrested her, which led him to arrest her? Is that what you're saying? Once he has it, once — with the facts within his universe, yes, that's correct. That once he has it, he can arrest. Unless he gets — unless the witness statement is flatly incredible. I forget the Seventh Circuit phrase for that, where the nature of the witness statement is not capable of belief, I think, is the standard they use. Well, let me put you this hypothetical. Suppose everything happened. Suppose there were different people involved. And after she, the teacher, had said, I don't want to — I'm not going to talk to you unless I can have a lawyer present, he said, well, I'm going to arrest you. He said, it's been my experience. The people of Italian extraction generally are guilty when it looks that they're guilty. If your name were Jones, I wouldn't arrest you, but because your name is Vinasati, you're under arrest. Would he still have a defense that he had probable cause to arrest her? Well, no, because at that point, he's explaining that he doesn't believe he has probable cause other than that motive. Other than that motive. But you're wrong about that, because probable cause is objective. So what we look is the evidence that he has. And he could arrest. You know, you have this habit of cutting in. Sorry, I apologize, Your Honor. Other people are speaking. It doesn't really help your cause, just distracts. I apologize. It's rude. I'm sorry. It's really poor. I mean, you look at what a reasonable officer would have, right? And if a reasonable officer would have probable cause, that's the end of it. The fact that he says, I personally choose not to think you committed the crime but for the fact that you have an Italian name, and that's what puts me over the top, that doesn't have any effect on probable cause, right? That he – well, then you start getting into the, is he discriminating on the basis of something other than the objective evidence. You might have another type of constitutional claim. But the question is whether he had probable cause for making the arrest. And before he makes the arrest, he says, I'm making the arrest for an impermissible reason. How can you say that he still has probable cause to make the arrest? Because if he has objective evidence that suggests a crime has been committed, it doesn't – like I said, the – give me a second. The crime victim doesn't lose out, so to speak. Maybe they've given him an accurate account just because the officer happens to be biased in some way or the other. That's probably – that's why the Fourth Amendment – But in my hypothetical, it's a fair assumption, isn't it, that if it had been some other officer, some other officer, he wouldn't have arrested her. She's arrested because of the coincidence that this particular officer brings to bear impermissible grounds. And why doesn't that, in effect, say that whatever may have gone before, if that was the reason for the arrest, he didn't have probable cause? Because if there's – if there's objective probable cause, an officer can arrest. Let's assume it's probable cause up to the time he says, I'm arresting you because you have an Italian name. The objective facts based on probable cause don't change. There's still probable cause for arrest. There might be some officers that might not arrest in those circumstances. They might prefer further investigation. They might want to build a case more. I mean, I think it's often the case the police officers do an investigation. They might get probable cause early, but not arrest for various reasons. They may want to develop more evidence. The question is – That would be true also if he said to her, if you want a lawyer, he said, I think I'm going to arrest you because just looking at you, you look to me like the sort of person who would commit such a crime. But if he – Would that – he'd still have probable cause in your – under your theory. If he otherwise has objective facts to support the arrest. Assuming objective facts which, apart from what he said, would have justified the arrest. Correct. He would still – he would still have probable cause to arrest, yes. Even if there's probable cause to arrest on an objective basis, if there's a discriminatory discrimination in application, isn't that a – that would be a constitutional violation, right? Discriminatory – it wouldn't be a Fourth Amendment violation. No. It's like a Yick Woe v. Hopkins discrimination. I'm not – I'm not following the Court's point, if – I apologize. Well, you could have probable cause, but if you exercise your discretion based on an evil motive, you're probably violating the Constitution, not for lack of probable cause, but because of the other reason. Whatever – correct, correct. Like a Fourteenth Amendment claim, I think – I think that would be right. It would not be a – would not be a Fourth Amendment claim. But I think my point in this context, even if we try and spin this to a Fifth Amendment, Sixth Amendment, Five-and-a-half Amendment claim, that I think there still ends up being qualified immunity given her invocation because it could foul up future proceedings by not stopping the interrogation at that point. Well, that doesn't really apply because stopping the interrogation is not the same as arresting her. He could just walk away. So the fact that he has to stop questioning her or feels he has to stop questioning her doesn't buy you anything at all. Well, in the context that this is being pushed as a Fourth Amendment claim, once he has – I understand. Your point is that she doesn't raise or you claim she doesn't raise a claim based on equal protection, and that's a good argument. We'll see what counsel has to say about it. But beyond that, you're not making a very persuasive case that he had to – somehow he had to arrest her because he couldn't keep questioning her. The two are not connected. He could stop questioning her. He could just walk away and go talk to some other people, right? But once he has the ability to arrest – I mean, once he has probable cause, he can arrest. I asked you a question. The other thing you don't do is to listen to the question asked you and answer them. Maybe I may have misunderstood the question. Well, because you weren't listening. You know, so once he finds out she – or he believes he can no longer ask her questions, he doesn't have to arrest her. He can walk away, go talk to some other people, yes or no. He can, yes. And he could, for example, say, gee, I didn't get anything out of her, but what I'm going to do is go talk to the principal, ask about this girl and find out what kind of reputation she has for telling the truth or whether she's a troublemaker. He could have done that. So the fact that he feels he can no longer question her does not in itself or doesn't in itself justify the arrest? Justify the arrest? Right. What justifies the arrest is the existing probable cause. It doesn't – you're right. He already has the basis for the arrest. In terms of justifying, he has gotten a victim statement, he has tried to talk to the suspect, he's conducted that investigation, the suspect has said, I don't want to talk essentially, at that point he has probable cause, he can arrest. He doesn't have to arrest, but he can arrest. And that, at the end of the day, is what we're talking about here. He has probable cause to arrest at that point. Well, I – yes, I mean, we've said that a number of times. I have – and I – You were trying to make a new point, which is that somehow her failure to – to – her invocation of the right of counsel gave him a grounds, additional grounds for arresting. And that's not true. Well, I – if the Court took that as my point, that's not what – yeah. If that – the Court took that as my point, my point is that having talked to the victim, having tried to talk to the suspect, conducted that investigation. You know, he's left with what the suspect says, which he viewed was a credible account. He has probable cause to arrest. Well, he's got the statement of the suspect that she molested. He's got the evidence from the suspect that there was molestation. And he doesn't have a contrary statement from her. He has no denial from her. That's correct. He has no denial from her, but I think his point was, at that point, I had probable cause to arrest. I didn't need a denial of that. But she could have denied it and he could have still arrested. He would have had probable cause, because police officers are forced to choose between differing stories all the time. So, you know, that not – that wouldn't necessarily get rid of probable cause  Why don't we hear from opposing counsel? Thank you, Your Honor. Good morning, Your Honors. And first, I'd like to make a quick point, which I think is material, which is that counsel misstated the record on what I think is a very material point. It's cited in my brief at page 12 and in the supplemental excerpts at 242. And this is that after taking the statement from this alleged victim, the – Officer Youngquist went first to the district headquarters and spoke to a woman named Gloria Diaz and informed her that this allegation had been made. And she immediately placed the teacher on administrative leave. And this was communicated to Officer Youngquist, because the excerpt in the record is a page from his deposition where he testified to that. And that's extremely important in this case, because Officer Youngquist is justifying his very rapid arrest of Ms. John about an hour into this investigation on the basis that there was some sort of exigency, some sort of need to protect students. And that's not true. He had lots of time to conduct a thorough investigation and get the totality of the circumstances. The second thing I think he said was that he had to protect the students, but he didn't need exigency. All he needed was probable cause. I agree. However, the probable cause equation and the exigency work together. I think that's really what that Peng v. Hugh case tells us, where in that case, the deputy went to the middle of this domestic disturbance. People were being violent with each other. You know, he had to take action to protect people. And, you know, the Ninth Circuit in that case made several observations about the need to separate the combatants, to make a snap judgment. There was no reason to make a snap judgment here. There was no reason not to conduct a more thorough investigation and ascertain what all the circumstances were before making an arrest. And that's why this fact is so important, that Ms. John was separated from the students pending the completion of the investigation. Is it your position that the defect here was the failure further to investigate, or the defect that when he made the arrest, he just didn't have enough? I don't think he had enough, and I think that part of the enough equation is not only what he knew, but what he should have known at the time. And I think that's what cases like Wallace and Arpin tell us. Would it have made any difference, in your view, of this girl at the time of the incident was not 10 years old, but 16 years old? All the circumstances make a difference. In this case, and when we talk about, in fact, the statistics show that older girls make false allegations of sexual misconduct more often than younger ones. She's kind of in the middle of young and old. But the point is that Officer Youngquist knew about her delinquency from the get-go. It's not true that this is something he could have found out. I mean, these notes refer to her. She repeatedly uses profanity. She refers to tagging. She refers to jumping into gangs. She refers, she tells her girlfriend in the note about her boyfriend, you should fuck him a little. This is a 10-year-old girl. She says about the teacher, she should be poisoned or something. I wish she was dead. And that is what brought the investigation here. The officer was not brought here because of an allegation of sexual misconduct by the teacher. The officer was brought here to investigate this delinquent 10-year-old who showed signs of promiscuity. The police had been called for her just a few days before. She had just come off suspension. The vice principal, Mr. Lagosino, had been dealing with her over and over again. She had a well-established reputation for dishonesty, and that's why the officer was brought. He then takes her to the police station, and in an interview that there's absolutely no record of whatsoever, there's no contemporaneous notes, there's no recording in any fashion, she supposedly answered in one or two-word answers to his questions this incredible story which could have been corroborated or disproved very easily about her being left alone after detention with the teacher on some unspecified date in the last three or four weeks. And detentions are recorded, as he knew, on notes and so on, and he could have checked that out. So what I think Wallace in these cases say is that probable cause is not just... What does the record show he would have found out if he had checked out the record of detention? That there was no detention. There was no slip matching the time period that she was in... said she was in detention and this happened. And these have to be recorded, sent home to the parents, and then sent back and filed with the school. Also, all the kids leave the detention at the same time. The detention is only allowed to go a certain point in time. Unless there's only one kid being detained. But she said there were five or six. That's what she said. And she said they all left, but she didn't give any of their names. So... Didn't she say she didn't know their names? How do you not know the names of your schoolmates? You know... That's what I'm wondering about. Didn't she say there were four or five other girls at detention, but she couldn't say who they were? No, there's no evidence that she said that. You see, the problem here, Your Honor, is that there's no record of this interview. So at the time, he says, well, she said there were four or five people. And then when we asked him at his deposition, okay, well, did you see who they were? He said she said that there was... She didn't give... She couldn't identify the names, which in itself is simply unrealistic. Well, I don't know whose schools sometimes have 1,000, 2,000 kids. I mean, I don't know how big a school this is, but it's not at all unusual to have a... A high school with 2,000 children. I mean, this was not a high school. Junior high schools with 600, 700, 800 children are not at all unusual, are they? So I don't think that you would... Detention is not by class, right? It's by school. I believe it's by class, and I believe it was her classmates that were being referred to. That's my understanding of the record, Your Honor. You know, I'd be surprised. I mean, they... I think there's detention, and people get sent to detention from all sorts of classes, and it's not that every teacher has detention. I mean, I don't know. I'm just imagining, but recollecting from my... Well, I think Your Honor is highlighting what the problem here is, which is that there's all sorts of disputed facts.  And that she should have known the names of... Should have been able to come up with the names of other students in detention. I can easily imagine a situation where she would not know the names of other students. Could also be an indication of lying, but not necessarily. Well, the point is that they're saying that she gave this detailed description of what had happened, but a detailed description might have included facts like that, such that it could have been ascertained or... I think the claim is that she gave a detailed description of the crime, of the alleged crime, of the crime that she was claiming committed. And the crime that she claims committed didn't involve other children. It was involved as an interaction one-on-one between her and your client, or so it was alleged. And that when the officer tried to shake her description of the key events, the things that make up the alleged crime, she didn't budge. She was consistent in her story. She did not let herself be drawn to exaggerations or variations of the kind that one might easily fall into if one were fabricating. You know, you have a tendency to say, oh, yes, yes, that's right. That's right. Because you think you want to make up any story to sort of persuade your questioner. So, you know, that sounds pretty plausible to me. Well, the jury could reject that. And they could reject that in part on the basis that the trial judge questioned it, which is that the defendant's own declaration of this girl stated an exaggerated version of what happened. She changed one minute to three minutes. She changed touching one breast to touching both breasts. And then when we brought her in for deposition, she absolutely refused to make any statement about what had happened. So that is, again, these are all tribal issues of fact. If I could turn to this question of the lawyer and the invocation of the lawyer, part of the justification that's given for her arrest is that they had exhausted that avenue. Now, the trial court correctly found that there was a tribal issue of fact as to whether or not he could have just kept asking her questions. This was clearly not a custodial interview. She was not subject to Miranda in any sense. She was not given Miranda rights. All she said is, look, you've talked to this lawyer I've talked to. I just want to make it clear before I answer your question that I've asked for a lawyer to be here. Not that she was refusing. However, the simple solution, and what he should have done, and what I think citizens and people are entitled to expect of police, is say, okay, you want a lawyer? Then let's schedule an interview with a lawyer. Just the fact that she was going to have a lawyer does not mean that he was not going to be able to question her and get her side of the story. That's what should have happened here. Maybe so, but you don't have a Fifth Amendment claim, or Sixth Amendment claim. Well, actually, I do have a Fifth Amendment claim pled in the complaint, Your Honor. You do? Yes. It's just that the trial court- Where is it? Well, it's in the complaint. I have the complaint. It's on page five of the excerpts of record. The allegations, retaliating against plaintiff for excising her constitutional rights, including but not limited to her Fifth Amendment right to consent counsel and to remain silent, paragraph 19B. So it is, okay. Now, the trial court didn't reach that issue because the trial court found that there were tribal issues on the Fourth Amendment claim. So what happened to the Fifth Amendment claim? Is that still pending? Yeah, I believe it's still pending. So if we were to reverse the district court on its ruling, your position is that that wouldn't end the case. That you would still have a Fifth Amendment claim to, this was basically a partial summary judgment motion in the area. Right, and there's also state claims that would remain pending that are not subject to qualified immunity, but I think it would be a big mistake to reverse the trial court. Let me just think this out. The district court denied summary judgment, so there was no cleanup. There was no dismissal of the state claims, and there was no dismissal of pending claims or anything else. Because district court, so in your view, if we are firm here, I'm sorry, if we reverse here, all we're reversing are the Fourth Amendment claims. And then whatever other claims, state claims and Fifth Amendment retaliation claims or anything like that, those are still pending and you're still free to litigate those in the district court. Isn't that the end of the story then? We don't have to worry much about the retaliation claim because you still have it pending. Yes, I agree. So this then collapses to a simple case whether or not this officer had probable cause and nothing else. I'm not going by anything else. Well, I agree, yes. And I think it would be a big mistake to reverse the trial court on the probable cause determination because just to take one case that was cited by the defendants, People v. Ramey, this is a very well-known California criminal procedure case by the California Supreme Court. It's a general proposition that private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. So there's a tribal issue here as to whether or not there were circumstances that would cast doubt on this girl's reliability. She was being investigated for misconduct. She was being investigated for threatening to poison her teacher. She was taken from the school to the police station. Well, maybe so, but he was aware of that and he says he took it into account. And it's entirely possible that she was writing these notes because she was angry and frustrated about having been sexually assaulted. So she gets taken to the police station and it turns out she tells a fully truthful story, or he believes she tells a fully truthful story. Yes, I did write the notes, but the reason I wrote the notes is because this teacher sexually assaulted me. So then he has to make, at that point, he has to make a determination. Is she saying this to get out of trouble herself for writing the notes?  And, you know, can we really be litigating questions like that post hoc? You know, can we send it to a jury to make a decision like that? Absolutely, Your Honor. And what I think Your Honor is not including in the equation is, okay, he's got this story from her, which has got all sorts of problems with it, and then he's got all these avenues to see whether or not it can be corroborated or verified or not, which are just begging to be pursued. I mean, when he arrested Ms. John in the next room, are the files on this girl, are the vice principal, the principal, he talked to the school administrator. He still had the opportunity to interview Ms. John. He could have talked to the mother. He could have talked to the other girl. All this time, the teacher is suspended pending the investigation. There's simply no reason for him to act precipitously in this fashion. And I think that is what he should have done rather than think he can waltz into this complex situation, and in one hour of talking to this ---- You say that's what he should have done, but the question, it seems to me, is whether on the evidence that he had, it was permissible for him to do the other thing. And that's the real issue, isn't it? No. I don't agree, because I think what the Wallace case tells us is before you do extreme things like arrest people for despicable felonies, you have a duty to conduct some reasonable amount of investigation when the circumstances permit. Here, the circumstances permitted him to see whether or not there was corroboration. I don't think, in our view of the case, plaintiff's view of the case, is that this information was not sufficiently detailed and was not coming from a sufficiently credible source to constitute probable cause, period. And we cite the cases where people who are accused of crimes, which she essentially was, although she was 10 years old, are presumed not to be reliable. People who are in a jam like this, like she was in, she was in big trouble. She had just been suspended. She's in the police station. She had written a note about poisoning her teacher. She had written, you know, they had notes about her being involved in tagging and other gang-related activity. And an officer who's not accepting her other answers, all of a sudden she says something, that does not have the inherent reliability for an officer to go out without any corroboration whatsoever and conduct a warrantless arrest for a despicable felony that is going to ruin the career of a 30-year teacher. You know, there's a fine line, but an important one, between poor police work and unconstitutional action. And it just strikes me that what you, what the officer here did amounts to poor police work. And, but you know, how can we second guess, how can we have joy second guessing questions about whether or not, when you interview a 10-year-old child, whether you take the risk that you might be pursuing a false lead, as opposed to the risk that you don't believe her. And then she goes back and gets molested again, even more. I mean, I, you know, these are, these are fine judgments. And one way or the other, somebody's going to be unhappy with what the officer does. It just strikes me that having juries second guess that decision, months and years afterwards, with the benefit of hindsight, is not a good way to run a police department. Well, I think the court is bound by the many decisions of this court, that say that the issue of probable cause in situations like this is one for the jury. And it should be for the jury, because you have to bear in mind what the record is in this case. There is no record whatsoever of what Ashley told Officer Youngquist at the police station. It's just his own self-serving statement. Just in response to what you just said about this being a jury question. If we take what you just said as face value, then any time anybody gets arrested, they can, you know, don't get prosecuted or get acquitted. They, because you've got the problem of, if you do get convicted, that's a different, you've got a bar. But let's say they don't get prosecuted in this case, or they get acquitted. They always can bring a jury case by saying, we get a jury determination as to whether the officer of probable cause. Then at some point, courts have to step in and say, this is not a jury question. And I think that's what the Supreme Court has said we've got to do, to keep officers from spending their entire time in court, rather than out on the street where they're supposed to be. Well, that may be true, but this is not such a case. This is a case where this arrest never should have been made, because he did not have reliable information to begin with. He did not corroborate it. And he did not conduct what this court has said was his duty to investigate, to assemble what the totality of the circumstances are. He basically had a statement which made really no sense, coming from a person who was in a great deal of trouble, who was in custody at the police station, trying to dig herself out of a hole. Unrecorded, we don't really know how this interview went. And it was just the first piece in a puzzle to investigate, of which he had- I have seldom seen a plaintiff's lawyer in an excessive force case, or in this kind of case that didn't think he could do a better job of being a policeman than the police themselves. That's your job. But it's very hard to say that in a case like this. Putting aside the Fifth Amendment claim, and whether he exercises power for improper motive. But it's very hard to say that in a situation like this, it wasn't enough. Let's say, for example, the question where, based on what he had, could he have gotten a warrant to search her locked file cabinet that's in the classroom? And putting aside the question of that's a classroom, let's say it's her personal file cabinet, that she has an expectation of privacy. And he says, I've talked to this girl, exactly the same situation, right? And he goes to the magistrate and says, I think I would like to take a look at the detention reports that the teacher keeps in her locked file cabinet. I'm making a hypothetical here. Would we say, gee, he didn't have probable cause to get a warrant to open the file cabinet and look at detention reports to see whether this girl had shown up for detention, or whether she was alone with the teacher? I don't think so. I don't think so. I think we'd say, sure, there's probable cause. We say that all the time. Well, I think that there's a major distinction that in all these Fourth Amendment cases, the Supreme Court says you weigh the degree of the governmental intrusion with the individual's privacy interests at stake. It's one thing to search a locker. It's another thing to ruin someone's career by making a felony arrest for child molesting after 30 years of teaching elementary school students. Probable cause is probable cause, isn't it? I don't agree with that. I think it makes a big difference in what the degree of the governmental interest is and what the personal stake is, that a judge could very easily find probable cause for a search and not probable cause for an arrest. And I believe they do that all the time. The question here basically is qualified immunity, isn't it? Qualified immunity. And the only reason we're into this whole question of probable cause is the Supreme Court has told us that before we can decide qualified immunity, first we have to determine probable cause. And even if we were to hold that there wasn't probable cause for the search, that wouldn't necessarily preclude us from saying there was still qualified immunity. The standard of qualified immunity is somewhat lesser and somewhat different from that of probable cause. I think Your Honor misspoke. You said probable cause for the search. You meant the arrest. And they are two different standards. First, the court has to determine was there a constitutional violation? In other words, was there an arrest without probable cause? And second, was the defendant on fair notice that his conduct was unconstitutional? And the trial court found, looking at the record in the light most favorable to the plaintiff, to the party opposing the motion, that the answer to both those questions is for the plaintiff, that there was not probable cause and there was fair notice. There's cases that say you cannot rely on people who give information under these circumstances. And that there's a duty to conduct a reasonable investigation. I think the trial court opinion here is very well reasoned and addresses all these points, which are just replete with triable issues. Even as to whether or not he could have just continued asking her questions and she would have answered. Or as Judge Kaczynski said, gone in the next room and looked at the files and talked to these witnesses who were actually trying to talk to him, trying to tell him, you're making a mistake. This could not be. This is not in her nature. Thank you, Your Honor. Thank you, Your Honor. We'll give you a minute for a break, mostly because I want to ask you a question. And perhaps my colleagues have questions as well. So don't feel like you own the minute. My question has to do with the Fifth Amendment claim to complaint. What's your position as to that? Is that still pending? I think we would the qualified immunity would still apply to that, as I recall. You didn't bring a motion for qualified immunity on the Fifth Amendment claim. You brought it only on the Fourth Amendment claim. As I recall, it was brought as to all causes of action, but it focused on the existence of probable cause and qualified immunity for the entire course of conduct for the arrest, because the retaliatory conduct is the arrest. Let me ask you a question in a different way. Is the Fifth Amendment claim pending before us, so we have to decide it? Or is it still pending in district court, so it's not before us? I think the question of qualified immunity for it would be pending in this court, yes. Whether it's clearly he had the ability to arrest at that moment on the invocation of counsel. I saw nothing in your brief on the Fifth Amendment point, and I may have missed it. So if it is pending, as you have said, you've waived any arguments as to it by not raising it in your brief, and so we're bound to affirm on the Fifth Amendment, is what I understand. You said it's pending before us. The question of whether qualified immunity. Arguments pending before us as to which no claim has been raised in the brief, as you know, are waived. Well, I believe the argument presented by the Fifth Amendment is not waived. Did I miss it? Do you have something in your brief about the Fifth Amendment claim? The point is in the point that we made was on custodial — I asked you a question. Yes? Is there something I missed in the brief? We cite a couple of cases on custodial interrogation and the lack of a bright-line rule on invocation of counsel, because one of the points making in that context of was it reasonable for him to arrest, could he believe he could arrest once she invoked counsel, what we said was it's a blurry line. At that point, it can't be actionable against him for arresting, because at that point he had probable cause. Are you going to answer my question? That's the best answer I can give is that we have two cases in there that talk about the Fifth Amendment standards for custodial interrogation. I'm sorry, but the question I asked you is do you have an argument on the Fifth Amendment's retaliation claim? Do you have an argument? Is there anything — the fact that you cite cases that raise certain issues, which, frankly, is not being terribly relevant to that, is — do you have an argument? Is there something in the brief I missed where you say we're also entitled to qualified immunity on the Fifth Amendment? I think we just used the general phrase, qualified immunity. The Court is correct. We are focused on you. So your view is that that is pending before us, and we must look at your brief and see whether or not you've raised a viable argument as to that. If not, the normal rule applies that arguments not raised in appeal are waived. That's correct. Or, like I said, whether it falls within the qualified immunity that we've — that we've argued, because you look at the reasonableness of the officer's conduct in light of clearly established law. Let me ask you something from what you've said. In your motion seeking qualified immunity, you raised both the Fourth and Fifth Amendment claims? I believe we just argued — argued qualified immunity. We moved on all claims. We — there's no question we focused on the Fourth Amendment. We argued qualified immunity generally. You raised — you're telling me, I just want to be sure of this, that in your motion for qualified immunity, you asserted there was qualified immunity covering the Fifth Amendment claim. We used — we used to play all claims. But I will — I will confess. I didn't ask you what — I just asked you — it seems to me that's a question that is capable of a yes or no answer. And I think your answer is yes, but I'm not sure. The answer is — the answer is yes, but I — there's no question that in arguing it, it was — the Fourth Amendment received a major focus. I won't play games with the Court on that. I don't care about what received a major focus. I just want to be sure that your qualified immunity claim was not limited to the Fourth Amendment. You tell me it covered — I think it — I think there — as I recall, there's this — we move as to all claims. I'm not going to pretend that the focus wasn't on the Fourth Amendment. It clearly — I mean, it certainly was. No question about that. You keep answering a question nobody has asked you. You want — it's one of those things like, gee, I've got a very good answer to a question that's not being asked. I'm going to keep repeating it because I don't have a very good answer to the question that's being asked. We understand that the parties argued fully the Fourth Amendment claim. Now, put that out of your mind, okay? We don't care about that because we've discussed the Fourth Amendment claim adequately, okay? Let's think Fifth Amendment retaliation, okay? And the question you're being asked is, did you raise an argument on the Fifth Amendment retaliation claim? It's not your turn to speak. Would you please sit? I think we — I think it was contemplated that it was encompassed, but you — I don't — there's no specific Fifth Amendment argument. I think that's correct. I think that's correct. I think we moved as to all claims. I had a question, so it's not correct or incorrect. Okay. That is — then it's correct. We did not specifically — The answer to my question is no. No. We did not specifically argument Fifth Amendment. No is enough. The answer is no, right? That's correct. Do you wish to clarify the no? Other than we moved on all grounds, we thought that taking out the Fourth Amendment, since it's the causative element for the Fifth Amendment claim, it should fall. Was it separately argued? No. I have no idea what you just said, but okay. You see, the question is, do you have a claim below that you're appealing that is now pending before us? It's a very simple question. You — you — you had State claims. You do not claim that you moved for summary judgment of the State claims, do you? Correct. Not in this proceeding. That's right. Okay. So you're not going to say, oh, well, they're somehow encompassed in the claims we raised, right? That's right. Okay. And for all I know, there was a claim here for violation of Title VII. I mean, I don't know if there was. But if there was in the complaint, you didn't raise summary judgment as to that, okay? Right? Correct. Okay. We have been pointed to a claim for violation of the Fifth Amendment right to counsel and right to silence in the complaint. And you've been asked a simple question. Did you move for summary judgment on that part of the complaint, just like the State claims, just like the Title VII, you know, whatever those other claims are? And you must know. You were the lawyer below. You must know what you moved for summary judgment on. And your answer is no, you did not move for summary judgment on the Fifth Amendment retaliation claim. That's your answer. Actually, I wasn't the lawyer below. But having reviewed the plaintiffs, there was no specific argument on the Fourth Amendment — on the Fifth Amendment separately. Correct. You know, I'm not sure whether adding the word specific helps you any. Did you put this matter before the Court? Were you seeking — you know, you did not seek summary judgment on the State law claims. You'd be surprised if the district court had granted or denied summary judgment on the State claims. Yes? There was no argument. Yes. There was nothing written. So as you were going to court, or its predecessor, whoever it was that filed this, did they say, we want summary judgment on the Fifth Amendment? Is that part of the relief that they sought from the district court? They did not specifically argue that. They moved — I don't know what specifically means. Did you seek summary judgment on that claim? Is that a difficult question to understand? Well, having — You don't seem to have any trouble understanding when I say, did you move for summary judgment on the State claims. You don't say not specifically, right? Or we did — you don't — Well, I guess it's the cause development on the relationship, whether it's a relationship between the Fourth and the Fifth Amendment claim here. That has not been extensively briefed by anyone. Well, let me phrase the question a little differently. Do you think that the district judge, when he came to — he or she came to decide this case, believed that he or she had to decide a question of summary judgment on the Fifth Amendment claim? Did the judge say, well, now, let's see, what are the issues I have to decide in this case? Well, here's the Fourth Amendment claim. There's a motion for summary judgment on that. And here's some State claims. Ah, now, here's a — here's a Fifth Amendment claim, but they haven't moved for summary judgment, or did the judge say — and that's also covered by the motion. Was it — in other words, one of the whole purposes of moving is so that the district judge will know what he or she has to decide in the case. Otherwise, it's floating around up in the air. Well, I mean, I think having focused on the Fourth Amendment, because that's the actionable conduct to them that leads to the Fifth Amendment violation, I think the judge is, if he's going against you on the Fourth Amendment, he's never going to get to that issue, because that's — that is the actionable conduct for what they're now posing as a Fifth Amendment violation, and they're — So all that your Fifth Amendment claim basically is is a claim saying, this is what he did, and what he did violated the Fourth Amendment, violated the Fifth Amendment, maybe violated some other amendment, and violated various State laws. Is that right? And the argument on the Federal claims is, under qualified immunity, it's reasonable no matter where it is. It's either reasonable or not. But you've given away that long, long time ago in your argument when you said, well, if he had probable cause, but he said, but I'm arresting you because you're black, that would be an equal protection claim. So even though he had plenty of probable cause, that would be a separate constitutional violation for — for a Fourth Amendment violation for — based on — that was a question Judge Gould asked as well about — about equal protection, right? But there might be other consequences for the finding of probable cause for arrest, for example, cutting off damages. No, he has — he has probable — he has plenty of probable cause and says, I wouldn't arrest you but for the fact that you're black. And because you're black, I'm going to arrest your ass. I mean, he says that, you know. That would be, you know, sort of an angry, profane expression that — that is sort of a racial epithet. He would — at that point, he would have a separate constitutional violation, right? If he might. He might. Well, okay. No, he might. And the same thing is true if he says, I have discretion to arrest you or not. And the reason I'm arresting you is because you invoked your right to a lawyer. And people who invoke the right to a lawyer just really get my goat, and I'm going to arrest you for that. Well, it's not a — No, it's not a Fourth Amendment violation. But I'm not sure I — We have gotten past the Fourth Amendment. He has discretion. He could arrest. He could not arrest. And he says, the reason I'm arresting you is because I always arrest people who invoke their right to a lawyer. Because I believe that people who invoke their right to a lawyer are guilty. If they weren't guilty, they wouldn't need a lawyer. Now, see, I — Good — good question. Might also be a fair inference, but no. I'm kidding. I mean, looking — like I said, looking at the case law, I mean, I think he still — it doesn't insulate someone from arrest because the lawyer — the police officer may harbor those feelings and those otherwise probable cause. So I don't know. It may well cut off liability. Like I said, this has not gotten a lot of development. It certainly hasn't from plaintiff's side either. I think the fair inference is that this is not a matter raised before the district court. It is not a matter that the district court ruled on, that if we had Judge Matz here and we told him that's what he ruled on, he would think that we were kidding, because he's a very careful judge. I think no doubt about that. I mean, he — I just don't think it's encompassed in it. And if we were to rule on it, we'd be going beyond what's before us. So the question of what happens to the retaliation claim fairly is to be sorted out on remand, whether we affirm — We could go back. Whether we affirm or reverse. Yes. No, I take the — I take the Court's point, absolutely. Okay. I think we've got it. Any further questions from my colleagues? Well, I think that the — Pelley wanted to clarify something. He was raising his hand. So if we could let him speak, I would appreciate it. Sure. But nothing further of defense counsel. Okay? Let's hear — let Mr. Burton, plaintiff's counsel. What did you have? Well, I feel that I'm kind of responsible for sending the Court on a bit of a tangent when I cited the complaint. I had overlooked, and I should have known that, that there were stipulations to dismiss certain claims in advance of the summary judgment litigation. And this is on the appellate's excerpts of record at 16. And the plaintiff, my client, did stipulate to dismiss the Fifth Amendment to narrow the issues for the summary judgment. Now, I did that stipulation. I had overlooked it, and I thought of it when the argument was going on. That's why I raised my hand. So that's on page 16. However, that wasn't meant to dismiss the retaliation aspect, but this was in the aftermath of Chavez versus Martinez, which was a Supreme Court case that said that the Fifth Amendment is not violated by a Miranda violation in the context of a police interrogation, but only in the context of when those statements are introduced in court. And that — I believe that the retaliation claim is still alive, but I wanted to bring that to the attention of the Court. Okay. Well, it seems to me that that's something to be — what we were asking counsel is whether the Fifth Amendment claim was presented to the district court. I think that's what Judge Friedman was asking, and that's also what I was pursuing. Whether or not it survives something else, if it was not presented to the district court, not presented to us, then it's really not a concern of ours. And the effect of the stipulation or anything else can be sorted out when the case gets back to the — to the district court, it seems to me. But it has no bearing on the question of whether this was presented to the district court for the session, right? No, no. The stipulation is entered into before the motion for summary judgment. And I didn't want — I didn't want to leave this Court with my having pointed to that provision of the complaint and then not also having identified the stipulation. Fair enough. It's clear, isn't it, that however we dispose of this appeal, there will be further proceedings of some sort before the district court? Right, on the — on the State claims. Whatever it may be. But this is not the end of this case, no matter what we do. Well, except for the fact that the State claims that remain are false imprisonment and also 52.1 of the — of the civil code in California, which is sort of an analog of 1983. And those claims both turn on probable cause as well, although they're not subject to qualified amnesty. But there's still got to be some sort of action by the district court in this case, doesn't there? No matter what we do? Yes. That's all I ask. Thank you, Your Honor. Okay. Thank you. The case is argued. We'll stand for a minute.
judges: Friedman,, Kozinski, Gould